**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| United States of America,<br><br>         Plaintiff,<br><br>vs.<br><br>Denzel Renyal Michael Loyd,<br><br>         Defendant. | 2:20-cr-00274-APG-VCF-1<br><br>**Report and Recommendation** |

Defendant Denzel Renyal Michael Loyd filed a motion to suppress. ECF No. 60. On September 14, 2023, I held an evidentiary hearing on the motion to suppress. ECF No.76. I recommend that the motion to suppress be denied. ECF No. 60.

**I.     Background**

The government charged Loyd with four counts of Coercion and Enticement (Counts One, Three, Six, and Nine), three counts of Sexual Exploitation of a Child (Counts Two, Four, and Eight), one count of Transfer of Obscene Material to a Minor (Count Five), one count of Sex Trafficking of Children (Count Seven), and one count of Possession of Child Pornography (Count Ten). ECF No. 1.

The defendant argues in his motion to suppress that the affidavits supporting search warrants for the searches of his Facebook account and cell phone fail to establish probable cause (1) as written, or

1

alternatively, (2) when corrected under *Franks v. Delaware*. ECF No. 60 at 1, citing to 438 U.S. 154, 171 (1978). Defendant argues that the Las Vegas Metropolitan Police Department made a series of misrepresentations when it obtained the warrants. ECF No. 1 at 4. Defendant argues that the warrants are broad and do not establish probable cause of the offense of Nevada Sex Trafficking of a Child. *Id.* at 60. Defendant also argues that even if there were probable cause of sex trafficking, the cell phone warrant fails to establish a sufficient nexus with the crime. *Id.* at 16. The defendant argues that suppression is warranted under Franks because the warrant affidavits include numerous misrepresentations regarding the alleged victims' interviews, calling the affiant's veracity into doubt. *Id.* at 18. Defendant argues that the detective summarized the interviews to suggest that the subject conversations were more explicit regarding prostitution than they were, and that there were specific plans for the victims to engage in prostitution when none existed. *Id.* Regarding the cell phone warrant, defendant argues that detectives affirmatively misrepresented that they obtained details from the victims suggesting that there would be evidence of possession of child pornography on Loyd's cell phone. *Id.* at 18-19. Loyd argues that the warrants also fail for lack of specificity. *Id.* at 20.

The government argues in its response to the motion to suppress that a reviewing court may not reverse the issuing judge's determination of probable cause but for clear error. ECF No. 64 at 5. The government argues that there was probable cause for both warrants, limited by the attached affidavits, and they were reasonably specific. *Id.* at 9. The government argues that even if the warrants are overbroad suppression is not warranted. *Id.* at 17. The government also argues that there are no underlying misrepresentations or omissions for purposes of a Franks hearing. *Id.* at 64.

The defendant argues in the reply that when the police make misrepresentations to mislead the issuing judge, it strips the warrants of the deferential review on which the government relies. ECF No. 66 at 2. The defendant argues that since probable cause is lacking and the warrants are overbroad, they

cannot be saved by the good-faith exception or severance. *Id.* at 3.

At the evidentiary hearing on the motion to suppress, Sergeant[1] Michael Amburgey testified. ECF No. 76. Sergeant Amburgey testified that the Las Vegas Metropolitan Police Department received a CyberTip from Facebook that described child sex trafficking. Sergeant Amburgey testified that in every child sex trafficking case he works on he has an unrecorded preconversation with the victims, partly to build rapport, before he records the interviews. Sergeant Amburgey testified that he interviewed many of the victims in this case prior to seeking the two search warrants at issue (the Facebook and cell phone warrants). Sergeant Amburgey testified that in the preconversation stage, when the victim discloses potentially relevant details, he makes a mental note to bring those details back up in the recorded interview. Sergeant Amburgey testified that he is familiar with trafficking and the subculture of trafficking lingo.

Sergeant Amburgey testified that none of the victims met up with Loyd. Sergeant Amburgey testified regarding that he did not recall whether D.A. made it clear that Loyd sent D.A. a penis picture before she disclosed her age. Sergeant Amburgey read the transcript of D.A.'s interview on the stand which revealed that D.A. stated that Loyd sent the penis picture before he knew D.A.'s age. Sergeant Amburgey testified that victim T.C. described Loyd to him as a pimp who specifically tried to recruit minors. Sergeant Amburgey testified that victim K.H. didn't want to "get down" with Loyd's "program." Sergeant Amburgey testified that victim K.H. told him that Loyd told her that he beat and choked other prostitutes that worked for him. Sergeant Amburgey testified that K.H. told him that Loyd knew where she lived and that she worried about Loyd. Sergeant Amburgey testified he concluded that K.H. did not prostitute for Loyd because she feared him. Sergeant Amburgey testified that he stands by

---

[1] At the evidentiary hearing, Sergeant Ambergey clarified that he was a detective during the investigation and that he is now a Sergeant. I will refer to Sergeant Ambergey by his current title.

his determination that K.H. feared Loyd.

**II.     Discussion**

    **a.  Legal Standard**

The Fourth Amendment confers the right for people to "be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…" U.S. Const. amend. IV. The Warrants Clause of the Fourth Amendment requires that "no warrants shall issue, but upon probable cause" U.S. Const. amend. IV. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). A search warrant affidavit will demonstrate probable cause "if, under the totality of the circumstances, it reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003). What is needed is only a fair probability, and not a certainty, that evidence of crime or contraband will be found. See *Illinois v. Gates*, 462 U.S. 213, 235 (1983). The issuing judge "need not determine that the evidence is more likely than not to be found where the search takes place…The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991) (quoting *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985)).

The issuing judge's determination "should be paid great deference." *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). This deferential approach is the antithesis of a "grudging or negative attitude" toward search warrants and "a hypertechnical rather than a commonsense" analysis. *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965); accord *United States v. Seybold*, 726 F.2d 502, 505 (9th Cir. 1984) (holding that the limited scope to review simply means determining whether the magistrate had a substantial basis for concluding there was a fair probability that evidence would be found). A reviewing court may not reverse the issuing judge's determination but for clear error. *United*

*States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012).

The Fourth Amendment requires that a warrant describe with particularity the "things to be seized." U.S. Const. amend. IV.; *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The description of the things to be seized must be specific enough to enable the officers conducting the search reasonably to identify the things authorized to be seized. See *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004). This particularity "also ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause." *Id.* "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (citing *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)). Courts consider three factors in analyzing the breadth of a warrant: (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure and those that were not; and (3) whether the government could have described the items more particularly in light of the information available. *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015), see also *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

A warrant that is otherwise overbroad may be cured by the attached affidavit. "Cure by affidavit" is a well-established principle in the Ninth Circuit, wherein a warrant's overbreadth can be cured by an accompanying affidavit that more particularly describes the items to be seized. *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) (citing *United States v. Luk*, 859 F.2d 667, 676 (9th Cir. 1988)). For the "cure by affidavit" principle to apply, two requirements must be met: (1) the warrant must expressly incorporate the affidavit by reference, and (2) the affidavit must be either physically attached to the warrant or at least accompany the warrant when agents execute the search. *United States v. Kow*, 58

F.3d 423, 429 n.3 (9th Cir. 1995).

Although an affidavit in support of a search warrant is presumptively valid, the Supreme Court, in *Franks v. Delaware*, recognized a defendant's ability to challenge the "validity of the affidavit underlying a search warrant." 438 U.S. 154, 171 (1978); *United States v. Kleinman*, 880 F.3d 1020, 1038 (9th Cir. 2017). Under Franks, a defendant must first make a substantial preliminary showing that (1) "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "that the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citation, alteration, and internal quotation marks omitted). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

The caselaw speaks almost exclusively in terms of reviewing a lower court's decision to deny a defendant's request for a Franks hearing and whether the defendant showed his entitlement to such a hearing. There is a difference between whether a defendant has shown he is entitled to the hearing, i.e., the Court is required to hold the hearing, versus whether the Court may hold a hearing in its discretion and pursuant to its inherent docket management authority. See e.g., *U.S. v. Lane*, 2017 WL 8897163, *3 (M.D. Ala. Dec. 6, 2017) ("It is questionable whether defendant has carried his burden to have a Franks hearing. However, even if Defendant failed in his burden, while the law does not mandate a hearing, there is nothing which precludes the Court from holding one. As such, out of abundance of caution and given the lengthy sentence this defendant may face if convicted, the Court elected to hold a hearing"); report and recommendation adopted by *U.S. v. Lane*, 2017 WL 8897163, M.D. Ala., Dec. 06, 2017. The defendant must then establish both prongs by a preponderance of the evidence to prevail. *United States*

*v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019) (citing *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)). "If both requirements are met, the search warrant must be voided, and the fruits of the search excluded[.]" *Id.*

### b. Whether the Two Warrants Were Supported by Probable Cause

Loyd alleges that the Facebook affidavit does not establish probable cause for sex trafficking, because he claims that there is no evidence that Loyd successfully trafficked any of the state victims. See ECF No. 60 at 15. Nevada law states that a person is guilty of sex trafficking if the person "[i]nduces, causes, recruits, harbors, transports, provides, obtains or maintains a child to engage in prostitution, or to enter any place within this State in which prostitution is practiced, encouraged or allowed for the purpose of sexual conduct or prostitution." Nev. Rev. Stat. § 201.300(2)(a)(1).

The affidavit included conversations that Loyd had with numerous minor state victims as reported in CyberTip. ECF No. 60-3. In his conversation with one of the minor victims, Loyd asked, "all ya'll youngins" and one of the victims responded, "2 of us are 15 then the black one is 17." ECF No. 60-3 at 9-10. Loyd also responded, "I'm on sum pimping, y'all." *Id.* at 10. At another point, he reiterated that he was a "pimp," claiming that he is "not no trick" but a "p." In his conversation with another victim, he discusses or uses the terms "304," "bottom," "walking," "the game," "in pocket/out of pocket," "the blade," and "in calls and out calls." *Id.* at 16–24. Sargant (then Detective) Amburgey defined some, but not all, of these terms in the affidavit. For example, Amburgey defined "in calls and outcalls" as well as "walking" "[b]ased on your Affiants training and experience it is known in the pimp/prostitution subculture the term "in call" refers to a sex buyer traveling to a prostitute's location. The term "outcall" refers to a prostitute traveling to a sex buyer' location. The term "walking" refers to a prostitute walking in well-known areas where prostitutes are known to meet sex buyers." *Id.* at 24.

The affidavit articulated why it would be reasonable to search Loyd's Facebook account for

evidence of sex trafficking under Nevada law. Loyd's various attempts to recruit the state victims, whether or not they were ultimately successful, and as outlined in the affidavit, were sufficient for the issuing judge to have a substantial basis for concluding there was a fair probability that evidence of sex trafficking would be found in the Facebook return. See *Seybold*, 726 F.2d at 505.

The affidavit attached to the search warrant for Loyd's cell phone mentions the possibility of child pornography on the cell phone, but the warrant only seeks to search for evidence related to sex trafficking. The affidavit includes Facebook conversations between Loyd and the minor victims that alluded to possible text conversations. For example, Loyd tells one of the victims that he sent her pictures and told her to text another person. He also told another victim that he would send a text. See ECF No. 60-10 at 14, 22. The affidavit also noted that Loyd sent images of his genitalia to some of the minor victims. ECF No. 60-10 at 10–11. Given that Loyd discussed text communications with the victims via Facebook it was reasonable for the issuing judge to believe that there would be evidence of sex trafficking on the cell phone. The conversations between Loyd and the state victims often referred to text message communications, thus there was reason to believe that Loyd's conversations with those victims about sex trafficking continued via cell phone.

c. **Overbreadth and Specificity**

Regarding specificity and overbreadth, Loyd alleges that the Facebook search warrant should have been limited to only searching the conversations between Loyd and the state victims identified in the CyberTip. The defense argues that the police obtained thousands of pages of documents from Facebook. The parties agree that the affidavits are incorporated into the warrants. Because the affidavits are incorporated into the warrants, I look to the affidavit for further limiting instructions for the search and seizure of evidence. The Ninth Circuit has found that a search warrant is not overly broad when only information associated with defendant is searched and when the government is only authorized to search

8

for violations of the specified offenses. *Flores*, 802 F.3d at 1044. As noted in the Facebook affidavit, Loyd communicated via Facebook messaging with multiple victims, wherein he sent the victims images of himself and his genitals, he planned in-person meetings with the victims, and where he had video calls with the victims. Subscriber information, photographs, and videos identified the owner of a Facebook account. The two warrants here (and their incorporated affidavits) only sought to search the Facebook account and Loyd's cell phone for evidence related to sex trafficking. The search of the Facebook account was further limited to categories specific to the investigation. There was probable cause to search the categories of subscriber information, messages, photographs, videos, and location information.

      The warrants specified the crime to be investigated and the suspect (Loyd). The warrant was sufficiently particular given the circumstances, as the warrant limited investigators to only search for and seize evidence of sex trafficking. The messages outlined in the affidavit occurred between January 14, 2020, and March 27, 2020. ECF No. 60-3 at 8–34. Even without an express temporal limitation in the Facebook warrant, the information received from Facebook was limited to the period when Loyd exchanged messages with the state victims. Detective Amburgey discussed in the affidavit that traffickers often use social media to recruit vulnerable individuals and that other victims may be identified from the content of the Facebook account. ECF No. 60-3 at 39. The Facebook warrant, supported by probable cause that the account holder is committing the crime of sex trafficking, allows investigators to search for any evidence of sex trafficking.

      Although the defense notes that Facebook produced thousands of pages, the Ninth Circuit has acknowledged that "over-seizing" is an accepted reality in electronic searching, as "[t]here is no way to be sure exactly what an electronic file contains without somehow examining its contents." *Flores*, 802 F.3d at 1044–45 (quoting *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1177 (9th Cir. 2010)). Both the Facebook and the cell phone warrants were sufficiently narrow given the nature of

electronic evidence. Since the Facebook and cell phone warrants were supported by probable cause that the account holder was committing the crime of sex trafficking, this allowed investigators to search for any evidence of sex trafficking. The warrants are sufficiently specific and not overbroad.[2]

Defendant also argues that even if there was probable cause of sex trafficking, the cell phone warrant fails to establish a sufficient nexus, because the affidavit mentioned that there may be additional evidence of possession of child pornography on the device. ECF No. 60 at 16. The cell phone warrant, however, only seeks to search for evidence related to sex trafficking. Even if I struck any reference to potential child pornography on the phone (which I do not), the cell phone warrant is still supported by probable cause (such as the references to texting and taking pictures analyzed above) to search the cell phone for evidence of sex trafficking. I find that the issuing judge had a substantial basis for concluding that the supporting affidavit established probable cause regarding the crime of sex trafficking. There is no clear error here.

### d. Franks Issues

#### i. Preliminary Showing

Defendant argues that even if the warrants are facially valid, both warrants fail to establish probable cause once corrected under Franks. At the hearing regarding the Franks issue, I noted that it was questionable whether defendant has carried his burden to have a Franks evidentiary hearing. Loyd specifically alleged which portions of the affidavits he believed are false by pointing to differences between the evidence and the warrant. For example, he alleges that the warrant affidavits suggest that victim I.M. explicitly stated that Loyd tried to "pimp" them and that there was an explicit conversation

---

[2] Since I find that the warrants were not overbroad, I do not analyze the doctrines of severance or good faith. See *Flores*, 802 F.3d at 1045, quoting *United States v. Gomez–Soto*, 723 F.2d 649, 654 (9th Cir. 1984)( "Severance allows a court "to strike from a warrant those portions that are invalid and preserve those portions that satisfy the fourth amendment."); *United States v. Leon*, 468 U.S. 897, 920 ("When an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.")

regarding money in exchange for "sexual stuff," but the interview says, "just in case if he, he tried to do any like sexual, sexual stuff" and I.M. appears to deny discussing specifics with Loyd. ECF No. 60 at 5. Loyd argues that the warrant affidavits also improperly suggest that Loyd's conversations with P.D. were more explicit than they were. *Id.* The defendant also argues that the warrant affidavits falsely represent that K.H. had a specific agreement to prostitute for Loyd when no such agreement existed, falsely state that the reason K.H. did not prostitute for Loyd is because she feared him, and omit K.H.'s Facebook conversations suggesting that she was a pimp. Loyd also points out important omissions, such as T.C.'s unequivocal "No" when asked if she ever prostituted for Loyd.

The defendant argues that the warrant affidavits include numerous misrepresentations regarding the alleged victims' interviews, calling the affiant's veracity into doubt. The defendant argues that the detectives knew that the vagueness of the subject conversations and that none of the victims met with Loyd or engaged in prostitution for him posed a probable-cause problem. Loyd alleges the detectives summarized the interviews to suggest that the subject conversations were more explicit regarding prostitution than they were, and that there were specific plans for the victims to engage in prostitution when none existed.

As I noted in more detail at the hearing, this was a close call regarding the substantial preliminary showing because Loyd offered so many examples of potential misrepresentations and omissions, supported by extensive briefing and eleven exhibits. Even if defendant failed in his burden, however, while the law does not mandate a hearing, there is nothing which precludes me from holding one. At the hearing I found that out of abundance of caution and given the lengthy sentence this defendant may face if convicted, I elected to hold an evidentiary hearing. See e.g. *Lane*, 2017 WL 8897163 and 2017 WL 8897163.

### ii. Preponderance of the Evidence

#### 1. Recorded Interviews

Loyd points out multiple different types of omissions. The first type of omission Loyd notes is that the recorded victim interviews sometimes referred to topics that did not appear earlier in the recorded interview. For example, in the recorded interview the detective asked victim D.A., "you said, um, he first messaged you on Instagram, is that correct?" but the defendant notes that this prior statement appears nowhere in the transcribed portion of the interview. ECF No. 60 at 7. Loyd argues that this omission makes it impossible to tell whether the warrant affidavit accurately summarizes D.A.'s whole interview and calls this and the other interviews into doubt.

Sergeant Amburgey testified that when interviewing child victims, sometimes it takes time to build rapport in the preconversation phase before he records the interviews. While it would be clearer if the detective noted "in our preconversation you said", given the dynamic of the detective's job (interviewing children about sexual topics) such a standard would be impractical. I find that Sergeant Amburgey credibly testified that he endeavors to ensure that pertinent facts from the rapport building portion of the preconversations are included in the recorded interviews. Sergeant Amburgey did not intentionally or recklessly omit facts from the preconversation when he did not specifically clarify during the recorded portions of the interviews that certain questions arose from the preconversations.

#### 2. Explicit Conversations

Defendant argues that Sergeant Amburgey made the conversations sound more explicit than they were. I have reviewed the excerpts from the conversations between Loyd and victims I.M. and P.D., as outlined by both the defendant and the government. See ECF Nos. 60 at 5-6 and 64 at 23. The interviews, and the written conversations, contain references to slang. The warrants include excerpts from the online conversations, and summaries of Sergeant Amburgey's interviews with the victims written in his own words, which he notes are not "verbatim recitations." ECF No. 60-3 at 6. In the

Facebook warrant, Sergeant Amburgey acknowledges many, though not all, of the slang references and defines many of the terms "known in the pimp/prostitution subculture." *Id.* at 24.

At the evidentiary hearing, Sergeant Amburgey testified about his training, knowledge, and expertise in the lingo of trafficking subculture. Sergeant Amburgey testified that he is knowledgeable of trafficking subculture lingo, and that he authorized a training course that teaches first responders how to recognize child sex trafficking. I find that the defendant did not meet his burden to show that Sergeant Amburgey intentionally or recklessly made false or misleading statements to suggest that the conversations were more explicit than they were because (1) he included the full text of the Facebook conversations along with his interpretations and (2) he accurately captured the essence of his conversations with the victims, which contained many references to the same lingo.

### 3. Potential Omissions

Defendant argued at the hearing that Sergeant Amburgey explicitly stated that the victims never met up with Loyd, but he did not explicitly say that they never prostituted for Loyd. The defendant stresses that the only time he specifically says that a victim did not prostitute for Loyd is K.H., where he states that the reason that she did not prostitute for him is because she feared Loyd. Defendant argued at the hearing that Sergeant Amburgey's interpretation of K.H.'s interview with Loyd was unreasonable and reckless when he submitted it. Sergeant Amburgey read multiple portions of the transcripts from his interviews with K.H. during the evidentiary hearing, which included the testimony about Loyd telling K.H. that he beat and choked other prostitutes that worked for him.

Sergeant Amburgey also testified that K.H.'s statements about not wanting to get down with Loyd's program, based on his training and experience, convinced him that K.H. feared Loyd. Sergeant Amburgey explained that "a program" in trafficking lingo is the way a pimp controls the prostitutes that work for him, such as where you work, how you work, and how much money you are expected to make. Sergeant Amburgey testified that K.H. told him that part of Loyd's program would require her to walk

the streets in Las Vegas, which she did not initially want to do. She also told Sergeant Amburgey that Loyd got mad at her. Sergeant Amburgey testified that based on his training and experience, based on what K.H. told him during his interview, Loyd sounded like the kind of pimp that used force or violence against the victim to get what they wanted. I find that Sergeant Amburgey testified credibly that he believed (and still believes) that K.H. feared Loyd which led her to not prostitute for him.

The fact that Sergeant Amburgey did not specifically state that none of the other victims prostituted for Loyd is not a material omission because he stated that none of victims met up with Loyd. While the affidavit language could have been more clear, the defendant did not meet his burden to show that Sergeant Amburgey intentionally or recklessly omitted the term "prostitute" when discussing whether the other victims "met up" with Loyd. The omission of the word prostitute is not material for probable cause because Sergeant Amburgey specified that none of the victims met up with Loyd, which I find has the same meaning from the context of the warrants and affidavits in this particular case.

### 4. The Graphic Picture

Defendant also argues that Sergeant Amburgey mislead the judge regarding when Loyd sent D.A. the penis picture. D.A. stated in the interview that Loyd sent her the penis picture before he learned her age. In Sergeant Amburgey's synopsis of the interview with P.D. in the affidavit for the Facebook warrant, he states

> "While talking with DENZEL LOYD, P.O. and D.A. disclosed that they were fifteen years old. After finding out their age, DENZEL LOYD continued to communicate with them. DENZEL LOYD sent a photograph of his penis to D.A. as well as a photograph of himself."

See ECF No. 60-3 at 14.

In his synopsis of his interview with D.A., he states
D.A. disclosed to DENZEL LOYD that she was fourteen
years old to which DENZEL LOYD continued to communicate with her. Shortly after they
began communicating, DENZEL LOYD began telling D.A. that he wanted to have sex

14

      with her and that he wanted her to give him oral sex. DENZEL LOYD also sent a photograph to D.A. of his penis.

*Id.* at 15.

Defendant contends that Sergeant Amburgey intentionally or recklessly mislead the judge with these statements in the warrant. The defendant did not present any evidence or elicit any testimony to support his claim that Sergeant Amburgey intentionally or recklessly mislead the judge when applying for the warrants at issue.

The sentence in P.D.'s interview says that after he found out their age, he continued to communicate with them. Then in a new sentence he states that he sent a photo of his penis to D.A. Sergeant Amburgey does not affirmatively state that Loyd sent the photo after he learned D.A.'s age in the statements in the warrant in either P.D.'s or D.A.'s interview. While it is vague, the defendant did not meet his burden at the evidentiary hearing to show that Sergeant Amburgey intentionally or recklessly crafted the sentence about Loyd sending the graphic picture to mislead the judge.

Even if Loyd had met this first prong by a preponderance of the evidence these statements are not material for probable cause because the search warrant searched for evidence of sex trafficking. Even if I struck this sentence[3], which I do not, probable cause exists for the search warrant as I analyzed earlier. Sergeant Amburgey is a credible witness and I find that he testified consistently with what he stated in the warrants and affidavits. Defendant did not establish that Sergeant Amburgey intentionally or recklessly made any false or misleading statements or omissions by a preponderance of the evidence

---

[3] A defendant must show that the affidavit could not support a finding of probable cause after purging its falsities and supplemented by the omissions. *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir.), amended, 769 F.2d 1410 (9th Cir. 1985), (citing *Franks*, 438 U.S. at 171–72).

at the evidentiary hearing.

ACCORDINGLY,

I RECOMMEND that defendant Denzel Renyal Michael Loyd's motion to suppress (ECF No. 60) be DENIED.

DATED this 27th day of September 2023.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE